UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

JASON LOPEZ,

                Petitioner,

    - against -

W. LAPE, Superintendent, Coxsackie
Correctional Facility,

            Respondent.

**OPINION AND ORDER**

**10 Civ. 397 (SAS)**



------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

      Petitioner Jason Lopez, proceeding pro se, filed this habeas petition

pursuant to section 2254 of Title 28 of the United States Code, challenging his

2004 conviction for Murder in the Second Degree following a jury trial.  Lopez

asserts that:  (1) the admission of his co-defendant's statements at trial violated his

Sixth Amendment right of confrontation, (2) he was denied his Sixth Amendment

right to effective assistance of counsel, and (3) his sentence is excessive.  For the

reasons discussed below, Lopez's petition is denied.

1

## II.   BACKGROUND

### A.   Offense Conduct

One evening in late December 2000, Lopez and a co-defendant, Johnny Hernandez, attended a party at the home of a friend, Rosie, in the Bronx.[1] The victim, Juan Melendez, was also at the party.[2]   Lopez described the events of that evening in a post-arrest statement given to the police that was properly admitted into evidence at his trial:

> I was at a party at Rosie's house just hanging out with some other people that were at the party.  This guy had a nice chain and I thought about taking his chain. I started to have a good time with the party and forgot about taking the chain or thought about it anymore.  Then "J" [Hernandez] came in and he started talking about his kids and how happy he was about having twins.  "J" asked about the kid with the chain and I told him that I wanted to rob him of his chain and "J" said fuck it, let's do it and I agreed. I left the party with "J" and went to my house across the street and "J" went towards the projects.  We met up again and went back into the party.  Then Rosie was upset because people were going into her bedroom and waking up her kid and she started to tell the people to leave her house.  I went outside with "J" and the kid walked off.  I walked with "J" to take the chain from the kid and then "J" pulled out the gun and put it to the kid's head.  I backed up and then "J" shot the kid and took his chain and started to run towards 174th.  I ran, too, and came back to my house and stayed there.  I just want to rob the kid for his chain and I didn't know that "J" was going to shoot him.  No kid is worth dying over a

---

[1]   *See* Trial Transcript ("Trial Tr.") at 94-96, 101.

[2]   *See id.*

2

chain.[3]

## B.    Procedural History

### 1.    Trial

Lopez pleaded not guilty to an Indictment charging him with

acting in concert with another to commit the crimes of Murder in
the Second Degree, Robbery in the First Degree [], Robbery in the
Second Degree, Criminal Possession of Stolen Property in the
Fifth Degree, Criminal Possession of a Weapon in the Second
Degree, Criminal Possession of a Weapon in the Third Degree,
and Conspiracy in the Fourth Degree.[4]

At trial, the prosecution introduced Lopez's post-arrest statement, two

other statements by Lopez, the testimony of witnesses Kimberly Lisbon and Melo

Rivera, two statements Hernandez made to the police, and an audio taped

conversation between Lopez and Hernandez recorded while Hernandez was in

police custody.[5]  Lopez called no witnesses and neither he nor Hernandez

---

[3]     *Id.* at 326-28.  The accounts of Hernandez and other witnesses
differed slightly from Lopez's statement, but all tended to corroborate Lopez's
general description of the crime and the fact that Lopez was present when
Hernandez shot Melendez. *See id.*

[4]     Indictment No. 547/2001; *see also* Respondent's Appellate Brief
("Resp't Appellate Br."), Ex. 2 to 7/6/10 Declaration of Christopher J. Blira-
Koessler, Assistant District Attorney, in Opposition to Petition for a Writ of
Habeas Corpus ("Blira-Koessler Decl."), at 3.

[5]     *See id.* at 3-13.

testified.[6]

Lopez repeatedly objected, before and during trial, to the admission of Hernandez's statements and the taped conversation on the ground that they were inadmissable hearsay.[7] The trial court eventually admitted the evidence in redacted form, and when the statements were presented to the jury, the court advised the jury that the statements were intended solely to provide "a general description of events."[8] At no point did Lopez object to admission of the statements as a violation of the Sixth Amendment's Confrontation Clause.[9]

On February 4, 2004, the jury convicted Lopez of Murder in the Second Degree based on his participation in the robbery that led to Melendez's death.[10] Lopez was sentenced to twenty years to life in prison on February 26,

---

[6]     *See id.*; Petitioner's Appellate Brief ("Pet'r Appellate Br."), Ex. 1 to Blira-Koessler Decl., at 16.

[7]     *See* Pre-Trial Transcript ("Pre-Trial Tr.") at 23-24, 66-67; Trial Tr. at 361.

[8]     Trial Tr. at 442. *Accord id.* at 474-75 (The court: "We are just concerned with his overall description of the crime . . . ."). Once the court decided to admit Hernandez's first statement, Lopez requested that Hernandez's second statement be admitted as well, so that the inconsistencies between Hernandez's two accounts could be used to undermine Hernandez's credibility. *See* Pet'r Appellate Br. at 10 n.2.

[9]     *See* Resp't Appellate Br. at 15-17.

[10]     *See* Trial Tr. at 653.

4

2004.[11]

### 2. Direct Appeal

Lopez appealed his conviction to the Appellate Division, First Department.[12] On appeal, Lopez argued that in light of the Supreme Court's decision in *Crawford v. Washington*,[13] "the admission of Johnny Hernandez's custodial statements violated Jason Lopez's Sixth Amendment right to confront his accuser," and that the admission of Hernandez's statements was not harmless error.[14] Lopez additionally argued that his sentence was "harsh and excessive" given his youth[15] and "minor role in the offense" and urged that the First Department to use the discretion provided under New York law to reduce his sentence "in the interests of justice."[16]

On January 10, 2006, the First Department unanimously affirmed

---

[11]     *See* Sentencing Transcript ("Sentencing Tr.") at 12.

[12]     *See* Pet'r Appellate Br. at 25.

[13]     541 U.S. 36 (2004). *Crawford* was decided on March 8, 2004, and applied to Lopez's case, which was then pending on direct appeal. *See* Pet'r Appellate Br. at 16 n.3.

[14]     Pet'r Appellate Br. at 2.

[15]     Lopez was eighteen years old at the time of the offense. *See* Petitioner's Appellate Reply ("Pet'r Appellate Reply"), Ex. 3 to Blira-Koessler Decl., at 20.

[16]     Pet'r Appellate Br. at 22-23.

5

Lopez's conviction.[17]  With regard to Hernandez's statements, the First

Department held that Lopez, having objected to Hernandez's statements solely on

the basis of hearsay, failed to preserve a Confrontation Clause claim.[18]  The court

stated that "[a]lthough petitioner's trial occurred before the decision of the United

States Supreme Court in [*Crawford*], that circumstance does not affect petitioner's

obligation to make a proper constitutional claim, as opposed to a claim grounded

in state evidentiary law," and declined "to review petitioner's constitutional

arguments in the interest of justice."[19]  The First Department also declined to

reduce Lopez's sentence, as it "perceived no basis" for doing so.[20]

Although the First Department rejected Lopez's Confrontation Clause

argument on procedural grounds, the court then stated:

> Were we to review petitioner's claims, we would conclude that,
> as the People concede, [Hernandez's] statements were
> inadmissible under *Crawford*.  However, we find the error
> harmless, even under the standard for constitutional error.  There
> was overwhelming evidence of petitioner's guilt, including his
> own confession, as well as testimony from two witnesses that
> placed him at the scene of the crime and supported the inference
> of accessorial liability.  There was no error, constitutional or

---

[17]     *See People v. Lopez*, 808 N.Y.S.2d 648, 648 (1st Dep't 2006).

[18]     *See id.*

[19]     *Id.*

[20]     *Id.*

6

otherwise, in admitting the audiotaped telephone conversation between petitioner and his codefendant. The codefendant's portion of the conversation was not admitted for its truth, but to provide the context for the statements on the tape made by the petitioner.[21]

Lopez sought leave to appeal to the New York Court of Appeals,[22] which denied his application on June 26, 2006.[23]

### 3.    Motion to Vacate Judgment

In November 2006, Lopez filed a pro se Motion to Vacate Judgment in the trial court ("Motion to Vacate"), pursuant to New York Criminal Procedure Law § 440.10, alleging ineffective assistance of counsel and newly discovered evidence.[24] Lopez claimed that his former attorney, Patrick Bruno, was ineffective for not:

> (a) presenting an alibi defense, (b) informing him that only he could decide whether to testify at trial or not, (c) cross-examining Kimberly Lisbon . . . about whether the police forced her to lie, (d) calling his mother, Nilsa Hernandez, as a witness at trial, to testify that the police tried to coerce her and [Lopez] by telling them that, in exchange for an

---

[21]    *Id.* (citations omitted).

[22]    *See* 3/16/06 Letter from Lopez to Honorable Robert S. Smith ("3/16/06 Letter"), Ex. 4 to Blira-Koessler Decl., at 1.

[23]    *See People v. Lopez*, 7 N.Y.3d 758 (2006).

[24]    *See* Petitioner's Motion to Vacate Judgment ("Mot. to Vacate"), Ex. 6 to Blira-Koessler Decl., at 1-2.

incriminating statement from [Lopez], they could provide protection from individuals seeking to avenge the victim's death, (e) investigating the claims detailed in his motion to suppress his statement, wherein [Lopez] claimed that his last statement to the police was coerced, (f) visiting [Lopez] more than once, (g) giving [Lopez] paperwork related to his case, and (h) discussing legal matters with [Lopez] when he visited him.[25]

Lopez also claimed that newly discovered alibi evidence demonstrated that he was not present when Hernandez shot Melendez.[26]

On June 12, 2009, the Supreme Court of the State of New York, Bronx County, denied Lopez's Motion to Vacate following a hearing in which Lopez and Bruno, testified.[27] In its decision, the trial court noted that Bruno testified in a "forthright and persuasive" manner.[28] Having found Lopez "less than credible," the court credited Bruno's version of the facts.[29]

At the hearing, Bruno testified that he had been practicing law since 1979, and had handled approximately one hundred to one hundred and

---

[25]   Blira-Koessler Decl. ¶ 7; *see also* Mot. to Vacate at 1-6.

[26]   *See* Mot. to Vacate at 5.

[27]   *See* 6/12/09 Decision on Motion to Vacate ("Mot. to Vacate Decision"), Ex. 8 to Blira-Koessler Decl., at 1.

[28]   *Id.*

[29]   *Id.*

twenty-five homicide cases, of which thirty-five to forty went to trial.[30]

Bruno stated that he met with Lopez once or twice via video-conference

prior to trial and visited Lopez four days out of five during the two-week

trial.[31]  Bruno also visited the crime scene twice and interviewed potential

witnesses.[32]

Bruno stated that he and Lopez decided on a strategy based on

the theory that Lopez had not participated in either the homicide or the

underlying robbery.[33]  Although Bruno had obtained a plea offer of thirteen

years that would have covered the death of Melendez, as well as several

other felony charges that accrued after the Melendez shooting,[34] Lopez

insisted upon going to trial.[35]

---

[30]    *See* Hearing Transcript ("Hr'g Tr.") at 9-10.

[31]    *See id.* at 26; 3/2/04 Affirmation of Patrick Bruno in Support of
Assigned Counsel Voucher ("3/2/04 Bruno Aff."), Ex. 7 to Blira-Koessler Decl.,
¶¶ 16, 18.

[32]    *See id.* at 27-29, 39, 41-42.

[33]    *See id.* at 11-15.

[34]    At the time of trial, Lopez was facing charges of selling drugs to an
undercover police officer, assault, weapons possession, and promoting prison
contraband on Rikers Island. *See* Respondent's Memorandum of Law in
Opposition to Petition for a Writ of Habeas Corpus ("Resp't Mem.") at 29.

[35]    *See* Hr'g Tr. at 11-15.  At the hearing, Lopez testified that he would
not have pled guilty to any charge because he believed that he was completely

9

The New York trial court found that although Lopez told Bruno that he wanted to testify on several occasions, Bruno counseled against it.[36]  Bruno testified that he also told Lopez that the decision of whether or not to testify rested with Lopez alone.[37]  Bruno felt that Lopez should not testify because he would then have to explain his inculpatory statement to the police.[38]  Bruno was also concerned that Lopez would be poorly received by the jury, and that Lopez's bad temper would lead to an outburst on cross-examination.[39]  This latter concern was bolstered by the fact that prior misconduct during trial had led the judge to "prohibit[] [Lopez] from using writing implements during trial."[40]  Although Lopez vociferously objected to Bruno's advice, he eventually chose not to testify.[41]

---

innocent. *See id.* at 6-7.

[36]    *See* Mot. to Vacate Decision at 3.

[37]    *See* Hr'g Tr. at 16.

[38]    *See id.* at 16-17.

[39]    *See id.* at 40-41.

[40]    Mot. to Vacate Decision at 3.

[41]    *See id.*

Bruno and Lopez also discussed whether or not to present the jury with an affirmative defense to felony murder.[42]  Bruno informed Lopez that "[i]f we look for the charge down, you are in turn inviting the jury to convict you of the robbery.  If that was the case, you could have taken the plea and been exposed to less time."[43]  Bruno stated that Lopez responded, "No, we are going all the way and I want you to beat it."[44]  The trial court found that the decision not to pursue an affirmative defense was a strategic choice.[45]  Overall, the trial court concluded that Lopez was not denied effective assistance of counsel and that Lopez's remaining arguments were without merit.[46]

---

[42]     *See* Hr'g Tr. at 19-20.  In Lopez's case, the affirmative defense was that Lopez had no knowledge that the robbery would involve possession or use of a gun.  *See* Mot. to Vacate Decision at 3.

[43]     Hr'g Tr. at 19-20.

[44]     *Id.*

[45]     *See* Mot. to Vacate Decision at 5.

[46]     *See id.*  The trial court evaluated Lopez's ineffectiveness claim under New York's standard for effective assistance of counsel.  *See id.* at 4.  "Unlike the Federal standard which requires a showing that there be a 'reasonable probability' that counsel's errors affected the outcome of the case, the core inquiry in New York is whether defendant received 'meaningful representation.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Turner*, 5 N.Y.3d 476, 480 (2005)).  Although the standards differ, so long as "the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the

11

The First Department denied Lopez's motion for leave to

appeal on September 15, 2009.[47]  Lopez filed his habeas petition with this

Court on December 7, 2009.[48]  In his petition, Lopez claims,

> (a) that state courts erroneously admitted his co-
> defendant's statements into evidence, causing him
> prejudice; (b) counsel was ineffective for not (i) informing
> him that only he could decide whether to testify at trial or
> not, (ii) visiting him more than once, (iii) asking the trial
> court to submit the affirmative defense to felony murder to
> the jury, (iv) interviewing witnesses who were at the scene
> of the crime, and (v) objecting to the use of the co-
> defendant's statements at trial on the ground that they
> violated the Confrontation Clause of the United States
> Constitution; and (c) his sentence is excessive.[49]

## III.   LEGAL STANDARD

### A.   Section 2254

#### 1.   Standard of Review

Section 2254, as amended by the Antiterrorism and Effective

---

representation, reveal that the attorney provided meaningful representation, the
constitutional requirement will have been met." *People v. Baldi*, 54 N.Y.2d 137,
146-47 (1981). *Accord Rosario v. Ercole*, 601 F.3d 118, 124 (2d Cir. 2010)
(clarifying that the New York standard is not in conflict with the federal standard).

[47]     *See* 9/15/09 Decision on Leave to Appeal ("Leave to Appeal
Decision"), Ex. 10 to Blira-Koessler Decl.

[48]     *See* Blira-Koessler Decl. ¶ 11.

[49]     *Id.*; *see also* Petition for Writ of Habeas Corpus ("Habeas Pet.") at 4-
a-f.

Death Penalty Act of 1996 ("AEDPA"), provides that a federal court may

hear a petition for habeas corpus relief from a state prisoner only "on the

ground that he is in custody in violation of the Constitution or laws or

treaties of the United States."[50] The statute further provides:

> An application for a writ of habeas corpus on behalf of a
> person in custody pursuant to the judgment of a State court
> shall not be granted with respect to any claim that was
> adjudicated on the merits in State court proceedings unless
> the adjudication of the claim (1) resulted in a decision that
> was contrary to, or involved an unreasonable application
> of, clearly established Federal law, as determined by the
> Supreme Court of the United States.[51]

A state court's decision is "contrary to" federal law "if the state

court arrives at a conclusion opposite to that reached by [the Supreme

Court] on a question of law or if the state court decides a case differently

than [the Supreme Court] has on a set of materially indistinguishable

facts."[52] A decision is an "unreasonable application of" federal law if "the

state court identifies the correct governing legal principle from [the

Supreme Court's] decisions but unreasonably applies that principle to the

---

[50]    28 U.S.C. § 2254(a).

[51]    28 U.S.C. § 2254(d).

[52]    *Williams v. Taylor*, 529 U.S. 362, 413 (2000) (O'Connor, J.,
concurring and writing for the majority as to Part II of the opinion).

facts of the prisoner's case."[53]

## 2.   Exhaustion Requirement[54]

Section 2254 provides that a habeas petition by a state prisoner may not be granted unless "the applicant has exhausted the remedies available in the courts of the State."[55]  In order to satisfy the exhaustion requirement, a prisoner must have "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts,'"[56] either in the form of "explicit constitutional arguments" or simply by "alleging facts that fall 'well within the mainstream of

---

[53]    *Id.*

[54]    Section 2244(d)(1) of Title 28 of the United States Code provides that "a state prisoner must file a habeas petition in federal court within one year from the date his conviction becomes final."  The one-year limitations period is tolled while a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  In the present case, Lopez sought federal habeas relief within the proper time frame as his petition was filed on December 7, 2009, less than one year after the First Department denied Lopez's motion for leave to appeal the denial of his Motion to Vacate on September 15, 2009.  *See* Blira-Koessler Decl. ¶¶ 10-11.

[55]    28 U.S.C. § 2254(b)(1)(A).

[56]    *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

14

constitutional litigation.'"[57]  In New York, a prisoner may exhaust certain claims not raised on direct appeal through collateral proceedings, such as an application for a writ of error coram nobis.[58]  Whether on direct appeal or in a collateral proceeding, the claim must be presented to "the highest state court from which a decision can be had."[59]

Prior to AEDPA, district courts were required to dismiss any petition containing unexhausted claims.[60]  Under the AEDPA amendments, however, district courts have the discretion to deny a petition on the merits "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."[61]  In the exercise of this discretion, many district courts have chosen to deny unexhausted claims that are

---

[57]     *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc)).

[58]     *See, e.g., Figueroa v. Portuondo*, 96 F. Supp. 2d 256, 276 (S.D.N.Y. 1999) (citing *Klein*, 667 F.2d at 282; *Johnson v. Metz*, 609 F.2d 1052, 1055-56 (2d Cir. 1979)).

[59]     *Daye*, 696 F.2d at 190 n.3.

[60]     *See Rose v. Lundy*, 455 U.S. 509, 522 (1989).

[61]     28 U.S.C. § 2254(b)(2).

"patently frivolous."[62] The Supreme Court has noted that "plainly

meritless" claims should be denied on the merits rather than dismissed for

failure to exhaust.[63]

### 3.    Procedural Bar

Federal courts may not review a habeas claim if it was

defaulted in state court pursuant to an independent and adequate state

procedural rule.[64] This rule allows "state courts . . . to address those claims

in the first instance."[65] For a claim to be barred from habeas review, the

state court "must actually have relied on the procedural bar as an

independent basis for its disposition of the case."[66] In general, for a habeas

claim to be procedurally barred, reliance on the state procedural rule must

---

[62]    *Naranjo v. Filion*, No. 02 Civ. 5549, 2003 WL 1900867, at *8
(S.D.N.Y. Apr. 16, 2003) (collecting cases). The court in *Naranjo* noted that the
Second Circuit has applied the "patently frivolous" standard where appropriate. *Id.*
at *8 n.14.

[63]    *Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that in light of the
discretion to deny unexhausted claims on the merits, the decision to stay a habeas
petition to allow a petitioner to exhaust plainly meritless claims would be an abuse
of discretion).

[64]    *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).

[65]    *Id.* at 732.

[66]    *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (quotation marks
omitted).

16

be "clear from the face of the opinion."[67]

    If the state court holding contains a statement that a claim is procedurally barred, but reaches the merits in the alternative, habeas review is inappropriate.[68]  In contrast, if the state court uses language such as "the claims are either unpreserved or without merit," the claims are subject to federal court review.[69]  Finally, if the state court issues a ruling without opinion and both procedural and substantive arguments are made in the briefs, the Second Circuit has held that the decision is presumed to be on state procedural grounds and not subject to habeas review.[70]

    Even if a petitioner's claims are procedurally barred under state law, he may still obtain habeas review if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[71]

---

[67]    *Coleman*, 501 U.S. at 735.

[68]    *See Harris*, 489 U.S. at 264 n.10.

[69]    *Jimenez v. Walker*, 458 F.3d 130, 133, 145 (2d Cir. 2006).

[70]    *See id.* at 139-40.

[71]    *Coleman*, 501 U.S. at 750.

17

## B.     Denial of Effective Assistance of Counsel

The Sixth Amendment to the United States Constitution

provides that a criminal defendant "shall enjoy the right . . . to have the

Assistance of Counsel for his defence."[72]  Included in that guarantee is the

right to effective assistance of counsel.[73]  The Supreme Court established

the standard for ineffective assistance of counsel in *Strickland v.*

*Washington*, which held that a petitioner must prove both (1) that counsel's

representation "fell below an objective standard of reasonableness"

measured under "prevailing professional norms," and (2) that "there is a

reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different."[74]

There is a "strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance," and courts

must "judge the reasonableness of counsel's challenged conduct on the facts

of the particular case."[75]  A defendant "must overcome the presumption that,

---

[72]     U.S. Const. amend. VI.

[73]     *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)
(collecting cases).

[74]     466 U.S. 668, 688 (1984).

[75]     *Id.* at 689, 690.

18

under the circumstances, the challenged action 'might be considered sound trial strategy.'"[76] "Under the second prong – the prejudice prong – a 'reasonable probability' of a different result is a 'probability sufficient to undermine confidence in the outcome.'"[77]

## IV.   DISCUSSION

### A.   Confrontation Clause Violation

#### 1.   Lopez's Confrontation Clause Claim Is Procedurally Barred

The First Department rejected Lopez's Confrontation Clause claim because Lopez failed to raise a constitutional claim at trial.[78]  In failing to raise the constitutional claim, Lopez failed to comply with New York's contemporaneous objection rule, which "allows for preservation of a claim if a party makes a specific protest at a time when the trial court has an effective opportunity to correct an error."[79]  The contemporaneous objection

---

[76]     *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

[77]     *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009) (quoting *Strickland*, 466 U.S. at 694).

[78]     *See Lopez*, 808 N.Y.S.2d at 648.

[79]     *Canemo v. Dennison*, No. 06 Civ. 2078, 2010 WL 1685384, at *3 (S.D.N.Y. Apr. 23, 2010) (citing N.Y. Crim. Proc. Law § 470.05(2)).  *Accord Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999).

rule is a settled and legitimate requirement of New York law[80] that provides

an independent and adequate ground for rejecting Lopez's Confrontation

Clause claim under New York law.

Although Lopez (unsuccessfully) argued on direct appeal that

his hearsay objection to Hernandez's statements was sufficient to preserve a

Confrontation Clause claim prior to *Crawford*,[81] New York courts have

consistently rejected this precise argument.[82] Moreover, the Second Circuit

has held that under federal law, "a hearsay objection, by itself, does not

---

[80]     *See Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999).

[81]     *See* Pet'r Appellate Reply at 3-4.

[82]     *See Canemo*, 2010 WL 1685384, at *4 ("New York courts have
overwhelmingly and explicitly held that invocation of a hearsay objection is
insufficient to preserve a Confrontation Clause objection."); *People v. Taylor*, 815
N.Y.S.2d 90, 91 (1st Dep't 2006) (rejecting Confrontation Clause claim on direct
appeal when petitioner failed to raise constitutional objection during his pre-
*Crawford* trial); *People v. Purdie*, 810 N.Y.S.2d 685, 685 (2d Dep't 2006) (same);
*People v. Cato*, 802 N.Y.S.2d 753, 754 (2d Dep't 2005) (same); *People v. Marino*,
800 N.Y.S.2d 439 (3d Dep't 2005) (same); *People v. Bones*, 793 N.Y.S.2d 545,
546 (3d Dep't 2005) (same); *see also People v. Kello*, 96 N.Y.2d 740, 743-44
(2001) ("As the Supreme Court of the United States has repeatedly recognized,
statutory or common-law hearsay rule exceptions may not necessarily satisfy the
mandate of the Confrontation Clause regarding admissibility of out-of-court
statements. . . . The defendant's failure to raise a Confrontation Clause objection
precluded the trial court and prosecution from considering and, thus, avoiding any
constitutional error . . . .") (citations omitted).

20

automatically preserve a Confrontation Clause claim."[83]  Accordingly,

Lopez defaulted on his Confrontation Clause claim in state court pursuant to

an independent and adequate state procedural rule.

### 2.    Lopez's Claim that Ineffective Assistance of Counsel Caused His Procedural Default Is Unexhausted

Lopez claims that his counsel was constitutionally ineffective

for failing to raise a Confrontation Clause objection to the admission of

Hernandez's statements.[84]  It is unclear whether Lopez raises this claim as

an independent ground for habeas relief or to overcome his procedural

default.[85]  In any event, Lopez raised this claim for the first time in his

application for leave to appeal the First Department's affirmation of his

conviction.[86]  Moreover, Lopez failed to raise this claim in his subsequent

Motion to Vacate, even though that motion claimed ineffective assistance of

counsel on numerous other grounds.[87]  Because this ineffectiveness of

---

[83]    *United States v. Dukagjini*, 326 F.3d 45, 60 (2d Cir. 2002).

[84]    *See* Blira-Koessler Decl. ¶ 11.

[85]    *See* Habeas Pet. at 4-f.

[86]    *See* 3/16/06 Letter at 5.

[87]    *See* Blira-Koessler Decl. ¶ 7.

21

counsel claim was not "fairly presented to an appropriate state court,"[88] the

claim is unexhausted.[89] Although the state trial court has the discretion to

deny a future motion to vacate based on Lopez's failure to raise this

ineffective assistance claim in his original Motion to Vacate, there is no

mandatory bar preventing Lopez from raising this claim in state court at this

stage of the proceedings.[90]

### 3.   Lopez Cannot Show Prejudice Due to Defense Counsel's Failure to Raise Constitutional Objections to the Admission of Co-Defendant's Statements

Although Lopez's ineffectiveness assistance of counsel claim

based on counsel's failure to make a constitutional objection to Hernandez's

statements at trial is unexhausted, this claim is without merit and therefore

dismissed.  To the extent Lopez is claiming ineffectiveness of counsel as

---

[88]    *Turner*, 262 F.3d at 123 (quotation marks and citation omitted).

[89]    *See Ellman v. Davis*, 42 F.3d 144, 148 (2d Cir. 1994) (presenting claim for the first time in an application for discretionary review does not satisfy the exhaustion requirement); *James v. Marshall*, No. 05 Civ. 1992, 2007 WL 3232513, at *8 (E.D.N.Y. Oct. 31, 2007) ("[A] claim is not 'fairly presented' where it is raised for 'the first and only time' in an application for discretionary review in the Court of Appeals.") (citation omitted).

[90]    *See* N.Y. Crim Proc. L. § 440.10(3)(c) ("Although the court may deny the motion [due to failure to raise the issue in a prior motion], in the interest of justice and for good cause shown it may in its discretion grant the motion if it is otherwise meritorious and vacate the judgment.").

cause for his procedural default,[91] his claim must fail because he cannot

show that he suffered any prejudice under the second prong of *Strickland v.*

*Washington.*[92] As an alternative ground for rejecting Lopez's Confrontation

Clause claim, the First Department found that the admission of Hernandez's

statements was harmless error.[93] This conclusion may only be disturbed if it

was contrary to, or involved an unreasonable application of, clearly

established federal law.[94]

The federal standard governing harmless error analysis is the

Supreme Court's decision in *Chapman v. California*, which holds that error

---

[91]    I discuss the ineffective assistance of counsel claim as an independent
ground for habeas relief below. *See* discussion *infra* Part IV.B.

[92]    *See Strickland*, 466 U.S. at 697 ("[A] court need not determine
whether counsel's performance was deficient before examining the prejudice
suffered by the petitioner as a result of the alleged deficiencies . . . . If it is easier
to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,
which we expect will be often so, that course should be followed.").

[93]    *See Lopez*, 808 N.Y.S.2d at 648. The First Department found the
error was harmless "even under the [federal] standard for constitutional error," *id.*,
which categorizes errors as "harmless" where there is no "reasonable possibility
that the error might have contributed to defendant's conviction and that it was thus
harmless beyond a reasonable doubt." *People v. Crimmins*, 36 N.Y.2d 230, 237
(1975) (citing *Chapman v. California*, 386 U.S. 18, 24 (1967); *Fahy v.
Connecticut*, 375 U.S. 85 (1963)).

[94]    *See* 28 U.S.C. § 2254(d).

must be harmless beyond a reasonable doubt.[95]  The First Department

observed that "[t]here was overwhelming evidence of petitioner's guilt,

including his own confession, as well as testimony from two witnesses that

placed him at the scene of the crime and supported the inference of

accessorial liability."[96]  This was a reasonable observation.  To convict

Lopez of felony murder under New York law, the prosecution had to prove:

(1) that Lopez participated in the commission of the underlying felony, and

(2) that one of the participants caused the death of another person in the

course of the felony.[97]  Lopez, who was at the scene of the crime, admitted

that he came up with the idea to rob Melendez and that he and Hernandez

followed Melendez out of the party with the intent to rob him.[98]  Between

---

[95]     *Chapman v. California*, 386 U.S. 18, 24 (1967).  This standard
applies even though the First Department did not cite directly to *Chapman* in its
decision.  *See Gutierrez v. McGinnis*, 389 F.3d 300, 308 (2d Cir. 2004) ("[F]or
AEDPA deference to attach to a state adjudication of a federal claim, our Circuit
does not require state courts to cite federal precedent when disposing of that claim.
Therefore, the question is whether the First Department reasonably applied
*Chapman* or New York's equivalent interpretation.").  Although the First
Department did not explicitly reference *Chapman*, its decision was in no way
contrary to the *Chapman* standard.

[96]     *Lopez*, 808 N.Y.S.2d at 648.

[97]     *See People v. Bornholdt*, 33 N.Y.2d 75, 86 (1973).

[98]     *See* Trial Tr. at 326-28.

Lopez's statements and the testimony of Lisbon and Rivera, the jury had ample evidence to conclude that Lopez participated in the robbery that led to Melendez's death. Thus, it can hardly be said that the First Department was unreasonable in finding that the evidence overwhelmingly supported Lopez's guilt. Accordingly, the First Department's finding of harmless error was a reasonable application of *Chapman* that this Court cannot disturb. Lopez therefore cannot show any prejudice resulting from his counsel's failure to object to Hernandez's statements on constitutional grounds, and thus cannot rely on ineffective assistance of counsel as cause for his procedural default.[99] Because Lopez has not shown "cause" for his procedural default, I need not consider the "actual prejudice" component of the "cause and prejudice" analysis.[100]

---

[99]      *Coleman*, 501 U.S. at 750. Nor can Lopez overcome procedural default by showing that a "substantial miscarriage of justice" occurred in his case. *Id.* This ground for habeas review occurs "only in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Lopez has made no showing suggesting that he is entitled to such extraordinary relief.

[100]     The "prejudice" component of "cause and prejudice" is arguably a higher standard than the "prejudice" described in *Strickland. See Zinzer v. State of Iowa*, 60 F.3d 1296, 1299 n.7 (8th Cir. 1995) ("The 'actual prejudice' required to overcome the procedural bar must be a higher standard than the *Strickland* prejudice required to establish the underlying claim for ineffective assistance of counsel."). In any event, without a showing of prejudice under the less demanding *Strickland* standard, there is no "actual prejudice" and no cause to overcome the

**B.     Denial of Effective Assistance of Counsel**

With the exception of the ineffectiveness claim based on counsel's failure to raise a constitutional objection to the admission of Hernandez's statements, the state trial court that denied Lopez's Motion to Vacate considered and rejected all of the ineffectiveness of counsel claims contained in the instant petition.[101]   Because the trial court decided these ineffectiveness claims on the merits, its findings will stand unless the trial court's decision was contrary to or an unreasonable application of *Strickland*.[102]

Following a hearing in which both Lopez and Bruno testified, the trial court held that Bruno provided Lopez effective counsel.[103] Specifically, the trial court found that Bruno:  (1) met with Lopez and discussed his case with him on multiple occasions, (2) visited the crime scene twice, (3) interviewed potential witnesses, and (4) reviewed the

---

procedural bar. *See Felder v. Johnson*, 180 F.3d 206, 215 n.12 (5th Cir. 1999).

[101]     *See* Mot. to Vacate at 4-5; Mot. to Vacate Decision at 2-5.

[102]     *See Henry v. Poole*, 409 F.3d 48, 67 (2d Cir. 2005).

[103]     *See* Mot. to Vacate Decision at 5.

26

transcript from Hernandez's trial.[104] In addition, the trial court found that

although Lopez and Bruno disagreed over whether Lopez should testify,

Lopez ultimately deferred to Bruno's advice and elected not to testify.[105]

Finally, the trial court concluded that the decision not to raise an affirmative

defense to felony murder was a strategic choice made jointly by Lopez and

Bruno.[106] These factual findings, which are accorded the presumption of

correctness,[107] were supported by Bruno's testimony, which the trial court

credited,[108] and by the Trial Transcript.[109] Based on its consideration of both

---

[104]     *See id.* at 2-4.

[105]     *See id.* at 5.

[106]     *See id.* Although it is unclear from the record whether Lopez ever
explicitly raised an ineffectiveness claim based on counsel's failure to seek the
charge of the affirmative defense to felony murder, the trial court discussed this
issue in its Decision and found that the decision not to seek the affirmative defense
charge was a strategic choice made by Lopez and Bruno together. *See* Mot. to
Vacate Decision at 3-5.

[107]     *See* 28 U.S.C. § 2254(e)(1) (stating that "a determination of a factual
issue made by a State court shall be presumed to be correct" and that a habeas
petitioner "shall have the burden of rebutting the presumption of correctness by
clear and convincing evidence").

[108]     *See id.* at 1.

[109]     The Trial Transcript indicates that Bruno mounted a vigorous defense
based on the strategy upon which he and Lopez had mutually agreed. *See* Resp't
Mem. at 2; Trial Tr. at 33, 35, 512-13. The Transcript also reveals that Bruno
worked hard to mitigate the effects of Hernandez's statements by emphasizing
their inconsistencies and Hernandez's powerful motivation to shift blame onto

the existing record and the evidence adduced from the Hearing, the trial

court did not identify any deficiencies in Bruno's performance and therefore

concluded that Lopez was not denied effective assistance of counsel.[110]  The

trial court's decision was a patently reasonable application of *Strickland* that

this Court may not overturn.

The trial court did not consider Lopez's current claim that

Bruno was ineffective for failing to make a Confrontation Clause objection

to the admission of Hernandez's statements because Lopez failed to raise

the claim in his Motion to Vacate.  However, because Lopez cannot show

that the failure to raise this claim caused him prejudice,[111] this ineffective

assistance of counsel claim also fails as an independent basis for habeas

relief.[112]

---

Lopez. *See* Trial Tr. at 521-26.  The judge presiding over Lopez's trial even
commended Bruno on his representation of Lopez at the Sentencing Hearing,
stating, "I believe you tried a good case.  The facts were against your client,
largely because of the statements that your client made . . . . you've always given
your clients good representation and I believe you did that this time."  Sentencing
Tr. at 7.

    [110]    *See* Mot. to Vacate Decision at 5.

    [111]    *See* discussion *supra* Part IV.A.3.

    [112]    *See Strickland*, 466 U.S. at 697.

## C.   Excessive Sentence

Lopez raises a *constitutional* objection to his sentence for the first time in his habeas petition.[113]  This claim is unexhausted, but it is also without merit.  Lopez was sentenced to an indefinite term of twenty years to life for Murder in the Second Degree.[114]  This term is within the limits set by New York law.[115]  "It is well established that, when a sentence falls within the range prescribed by state law, the length of the sentence may not be raised as grounds for federal habeas relief."[116]  Because Lopez's sentence was within the range authorized by New York law, his excessive sentence claim is not cognizable on habeas review.

## D.   Certificate of Appealability

A district court may grant a certificate of appealability allowing a habeas petitioner to appeal the denial of his petition with respect to any of

---

[113]     Lopez's sentencing claim on direct appeal was based on state law. *See* Pet'r Appellate Br. at 22-24.

[114]     *See* Blira-Koessler Decl. ¶ 3.

[115]     *See* N.Y. Penal Law §§ 70.00(2)(a), (3)(a)(i), 125.25.

[116]     *Thomas v. Senkowski*, 968 F. Supp. 953, 956 (S.D.N.Y. 1997) (citing *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . a sentence is within the range prescribed by state law.")).

petitioner's claims only if petitioner makes a substantial showing of the denial of a constitutional right.[117] A substantial showing requires only that a petitioner demonstrate "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"[118] Lopez has made no such showing, and I therefore decline to grant a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed above, Lopez's petition is denied. The Clerk of the Court is directed to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            August 12, 2010

---

[117]      *See* 28 U.S.C. § 2253(c)(2). *See also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).

[118]      *Rhagi v. Artuz*, 309 F.3d 103, 106 (2d Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks and citation omitted)).

30

## - Appearances -

**Petitioner (Pro Se):**

Jason Lopez
DIN # 04-A-1297
Eastern New York Correctional Facility
Box 338
Napanoch, New York 12458

**For Respondent:**

Christopher J. Blira-Koessler
Assistant District Attorney
District Attorney's Office, Bronx County
198 East 161st Street
Bronx, New York 10451
(718) 590-2156